United States District Court
Southern District of Texas
**ENTERED**
October 06, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOHNNY  FLORES,                              §
                                             §
          Petitioner,                        §
VS.                                          §     CIVIL ACTION NO. 2:20-CV-00070
                                             §
DIRECTOR TDCJ-CID,                           §
                                             §
          Respondent.                        §

## MEMORANDUM AND RECOMMENDATION

Petitioner Johnny Flores is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the Allred Unit in Iowa Park, Texas.  Proceeding *pro se*, Flores filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on February 20, 2020.  (D.E. 2).  Flores challenges his conviction and life sentence for murder, raising claims of ineffective assistance of counsel and an Eighth Amendment violation.  Respondent filed a motion for summary judgment, to which Flores has responded.  (D.E. 14, 17).    As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Flores's habeas corpus petition be denied.  It is further recommended that a Certificate of Appealability ("COA") be denied.

## I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Flores was convicted in Nueces County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.  BACKGROUND

### a.  Petition and Claims

In his § 2254 petition and attached memorandum, Flores first contends that he received ineffective assistance from trial counsel because counsel failed to present evidence supporting a psychological expert's testimony.  (D.E. 2 at 6).  Flores contends that counsel should have introduced medical records documenting his mental illness, along with documentation of his special education background, to bolster an insanity defense.  Second, Flores contends that the sentence violates his Eighth Amendment rights because he did not have the mental capacity to the commit the crime he was convicted of. Flores also argues that counsel coerced him into not testifying and that the medication he was on during the trial made him confused and emotionally distressed.  (*Id.*).  Third, Flores asserts that counsel coerced him into going to trial and that he was not aware of what was going on due to the medication he was taking.  (*Id.* at 7).  Finally, Flores contends that counsel was ineffective for: (1) failing to object to the presentation of autopsy photos; (2) failing to cross-examine the medical examiner regarding the victim's drug use and challenge false medical evidence; and (3) failing to present evidence regarding the effect his unstable medications had on the crime.  (*Id.*).

### b.  State Court Records

Flores was indicted for one count of first-degree murder, in violation of Tex. Penal Code § 19.02, after having been convicted of one other felony.  (D.E. 12-5 at 7-8).

Prior to trial, Flores moved for a psychiatric examination to determine whether he was sane at the time of the alleged offense and competent for trial.  (*Id.* at 59-60).  The

2

court granted the motion and ordered that Flores be examined by Dr. Troy Martinez. (*Id.* at 63). In his report, Dr. Martinez reviewed his interview with Flores and Flores's prior mental health records. (D.E. 12-13 at 127-131). Dr. Martinez diagnosed Flores with polysubstance dependence, in institutional remission, and a psychotic disorder not-otherwise-specified, which was asymptomatic at the time. (*Id.* at 131). He noted Flores's history of psychiatric treatment and prior diagnosis for schizoaffective disorder, but concluded that there was "little compelling indication of major mental illness playing a primary contributing role in relation to the alleged offense." (*Id.*).

At trial, Billy Whitehead, an officer with the Corpus Christi Police Department, testified to the following. (D.E. 12-8 at 37-38). In July 2013, he responded to a 911 call in which a man advised that he killed his girlfriend and had a knife. (*Id.* at 38-39). When he arrived at the residence, he did not notice anything unusual. (*Id.* at 40). He and his partner approached the residence, where a man was sitting on the front porch, talking on a cell phone, and smoking a cigarette. (*Id.*). The man was Flores, who was calm and not acting unusual. (*Id.* at 40-41). He was a little upset, but not combative. (*Id.* at 46). The state played a video recording of Flores after he was arrested and placed in a police car. (*Id.* at 43-44).

Ralph Lee, a detective with the Corpus Christi Police Department, testified that he interviewed Flores at the police department on the night of the offense. (*Id.* at 139-40). An audio recording of the interview was played for the jury. (*Id.* at 142). On cross-examination, Lee noted that Flores stated that he got a sexually-transmitted disease from the victim because she was a prostitute, and that after a fight with her, he "lost it." (*Id.* at

3

151-53).  During the interview, Flores claimed that he got the knife after the victim was already dead in order to kill himself.  (*Id.* at 153-54).

Dr. Ray Fernandez, the medical examiner, testified to the following.  (*Id.* at 177). He conducted an autopsy on the victim and completed a report.  (*Id.* at 178-80).  Injuries to the victim included a half-inch stab wound on her right temple.  (*Id.* at 180-81). Further, the victim had bruising on the side of her face, a broken nose, fractured front teeth, and internal bleeding on the left side of her neck.  (*Id.* at 183-84).

The state sought to introduce photos of the autopsy.  (*Id.* at 188).  Flores's counsel objected to the photos, arguing that they were not relevant to the issues in the case and were unfairly prejudicial.  (*Id.*).  The state argued that the photos included evidence of the stab wound, brain swelling, and bruising to the neck that indicated the potential for choking.  (*Id.* at 188).  The court overruled the objection, noting that the defense had challenged the underlying facts regarding Dr. Fernandez's opinions.  (*Id.* at 190).

Dr. Fernandez further testified that the victim had petechial hemorrhages around her eyes, which were pinpoint-size areas of bleeding.  (*Id.* at 192).  The bleeding was on both her eyes and her eyelids.  This type of bleeding was caused by pressure on the face area and was common where there was pressure on the nose and mouth/neck area.  It could be caused in a case of asphyxia where there was a blockage of oxygen.  (*Id.*). There was also evidence of swelling in the brain, which could be a result of the brain not getting enough oxygen.  (*Id.* at 199-200).  Dr. Fernandez concluded that the cause of death was mechanical asphyxia with a contributing condition of a stab wound to the right temple of the head.  (*Id.* at 200).  Mechanical asphyxia meant that there was some force

4

outside the body that blocked the victim's airway through pressure on the mouth, nose, neck, or all three. (*Id.*). Toxicology reports showed no evidence of drug use. (*Id.* at 204).

On cross-examination, Dr. Fernandez testified that the petechial hemorrhages could be caused by taking aspirin for an extended period of time, strenuous activity, or certain infectious diseases. (*Id.* at 212-13).

Flores presented testimony from Lovenia Flores,[1] his sister, who stated the following. (D.E. 12-9 at 16). In high school, Flores was in special education classes. (*Id.* at 17). He began having mental issues around 11 or 12, and they worsened as he got older. (*Id.* at 22-23). Their mother was diagnosed with schizophrenia. (*Id.* at 23). Flores lost his insurance and stopped taking his mental health medication a few months before the offense occurred. (*Id.* at 28). Flores was able to maintain full-time work as a welder for most of his adult life and take care of himself. (*Id.* at 33-34).

Dr. Troy Martinez, a forensic psychologist, testified to the following. (*Id.* at 50). He did both a competency evaluation and an insanity evaluation of Flores for the court. (*Id.* at 62-63). Before meeting with Flores, he reviewed the police reports and Flores's prior mental health records. (*Id.* at 63-64). Based on his medical records, Flores had been diagnosed with and treated for major mental illness, primarily schizoaffective disorder, although bipolar disorder had also been diagnosed. (*Id.* at 66-67). Based on Dr. Martinez's review of the records, Flores had not been on any medication for around four

---

[1] When referencing petitioner's sister, this memorandum uses her full name. Any references to "Flores" are to petitioner.

5

months prior to the offense.  (*Id.* at 69-70).  This likely caused some deterioration in Flores's mental state, but the exact result of being off medication varied on a case-by-case basis.  (*Id.* at 70-71).  Dr. Martinez believed that Flores was competent to stand trial based on an analysis of Flores and the relevant legal criteria.  (*Id.* at 72-75).  A person with schizoaffective disorder or bipolar disorder that was not on their medication could deteriorate in a way that would impact their impulse control and emotional stability.  (*Id.* at 82).  They could behave recklessly in that their actions could be irrational or impulsive. (*Id.* at 82-83).  Dr. Martinez concluded that Flores was sane at the time of the offense. (*Id.* at 85-86).

Dr. Martinez further testified that Flores's statement to the police that he "lost it" suggested that he did not feel capable of stopping himself or displaying self-control, which could have been affected by his mental illness.  (*Id.* at 88).  Flores's illness could cause him to perceive information in a way that he otherwise would not.  (*Id.*).  Dr. Martinez diagnosed Flores with polysubstance dependence with institutional remission and psychotic disorder not otherwise specified, currently asymptomatic.  (*Id.* at 99). Polysubstance dependence referred to different types of drugs, either illicit or otherwise. (*Id.*).

Following the completion of testimony, counsel was placed under oath and conducted a colloquy with Flores regarding his right to testify, and Flores stated that he chose not to testify and that no one forced him to make that decision.  (*Id.* at 116).  Flores also stated that he did not want to accept a plea offer for 50 years in prison and that he understood the range of possible punishment.  (*Id.* at 117-18).

6

Counsel requested an instruction on manslaughter, arguing that Flores acted recklessly. (*Id.* at 120-21). Counsel argued that the instruction would be appropriate given Flores's history of mental illness. (*Id.* at 122). He noted that they were not attempting to make an insanity or incompetency argument, but rather sought a manslaughter charge based on Flores's mental status at the time of the event, which indicated recklessness. (*Id.* at 125). The court denied the request for a manslaughter instruction. (*Id.* at 131).

During closing arguments, Flores's counsel acknowledged that Dr. Martinez found Flores to be both competent for trial and sane at the time of the offense. (*Id.* at 151-52). However, counsel argued that Flores's history of mental illness showed that he was not in his right mind at the time of the offense and that the state had accordingly failed to prove that he knowingly and intentionally committed the offense. (*Id.* at 153).

The jury found Flores guilty of murder. (*Id.* at 170).

Following the completion of testimony at the sentencing stage, Flores again indicated that he understood his right to testify and had chosen not to testify. (D.E. 12-10 at 135). During closing arguments, the state argued that the jury could "also consider [Flores's confession] and how he talked about going and getting the knife and coming back and stabbing her after he had already strangled her." (*Id.* at 156).

The jury sentenced Flores to life imprisonment and imposed a fine of $10,000. (*Id.* at 169).

On direct appeal, the Thirteenth District Court of Appeals of Texas affirmed Flores's conviction, rejecting Flores's sole argument that the trial court should have

7

granted the request for a manslaughter instruction.  (D.E. 12-4 at 8).

Flores subsequently filed an application for a writ of habeas corpus in state court under Article 11.07 of the Texas Code of Criminal Procedure.  (D.E. 12-35 at 12-29).  In the Article 11.07 application, Flores argued that: (1) counsel performed deficiently by failing to introduce medical records and educational transcripts to support an insanity defense; (2) his sentence violated Eighth Amendment rights because he did not have the mental capacity to commit the crime of conviction; (3) counsel coerced him into going to trial; (4) counsel was ineffective for failing to challenge the state's medical evidence, including Dr. Fernandez's testimony and the introduction of autopsy photos.  (*Id.* at 17-24).

Counsel Cecil Starcher stated in an affidavit that Dr. Martinez concluded that Flores was competent to stand trial and testified that Flores was not insane at the time of the offense.  (*Id.* at 77).  Moreover, he noted that counsel did object to the introduction of the autopsy photos.  (*Id.*).  Co-counsel David Klein stated the same.  (*Id.* at 75).

The trial court concluded that Flores failed to establish that counsels were deficient or that he was prejudiced by any of their actions.  (*Id.* at 81).  Thus, the trial court recommended that relief be denied.  (*Id.*).  A judge of the Texas Court of Criminal Appeals denied the Article 11.07 application without written order on the findings of the trial court.  (D.E. 12-30 at 1).

## III.  APPLICABLE LAW

### a.   *Anti-Terrorism and Effective Death Penalty Act ("AEDPA")*

Under AEDPA, a state prisoner may not obtain relief with respect to any claim

8

that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision.

9

Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 562 U.S. at 102. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id.* at 102. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny

10

relief." *Harrington*, 562 U.S. at 98.

      *b.  Exhaustion*

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   The exhaustion requirement "is not jurisdictional, but reflects the policy of federal-state comity, which is designed to give state courts the initial opportunity to consider and correct alleged violations of their prisoners' federal rights." *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005).  A petitioner may exhaust his state court remedies by filing either a petition for discretionary review or an application for habeas corpus relief with the Texas Court of Criminal Appeals. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990).  If a petitioner fails to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, there is a procedural default for purposes of federal habeas. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

There are two exceptions to the procedural bar doctrine.  A federal court can review the merits of a habeas claim if a petitioner shows cause for and prejudice from the procedural default. *Rocha v. Thaler*, 626 F.3d 815, 822 (5th Cir. 2010).  In addition, a federal court can address the merits of a claim if the petitioner can show that failure to do so would result in a fundamental miscarriage of justice. *Id.*  A petitioner can satisfy the fundamental-miscarriage-of-justice exception by showing by a preponderance of the

evidence that he is actually innocent of the crime of which he has been convicted. *Id.* at 822-823. Actual innocence means factual innocence, not legal insufficiency. *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). To meet the threshold requirement for an actual innocence claim, a petitioner must show that in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

  *b.*  *Ineffective Assistance of Counsel*

  To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland*. He must show both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.* at 687-88. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id.* at 697.

  Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* The court must then determine whether, in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance.  *Id.* at 690.

Federal habeas courts must guard against the danger of equating unreasonableness under

*Strickland* with unreasonableness under § 2254(d).  *Harrington*, 562 U.S. at 105.  "When

§ 2254(d) applies, the question is not whether counsel's actions were reasonable.  The

question is whether there is any reasonable argument that counsel satisfied *Strickland's*

deferential standard."  *Id.*

To show prejudice, a petitioner "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  *Strickland*, 466 U.S. at 695.

## IV.  DISCUSSION

### a.  *Failure to Present Psychological Evidence and Pursue Insanity Defense*

Respondent first argues that Flores's counsel did investigate the possibility of an

insanity defense, but concluded based on Dr. Martinez's report and testimony that the

record did not support that Flores was either insane or incompetent.  (D.E. 14 at 15).

Respondent contends that Flores has not established what additional investigation would

have found or how it would have altered the trial.  (*Id.*).

Flores responds that his history of mental illness supported an insanity defense and

that counsel ignored this fact because his primary concern was helping co-counsel get

experience trying a murder case.  (D.E. 17 at 14-16).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

When considering the facts of a habeas case, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Here, Flores has not established that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law because the record reflects that counsel investigated Flores's mental status.  Counsel moved for a psychiatric examination to determine whether Flores was competent at the time of the alleged offense and competent for trial.  (D.E. 12-5 at 59-60).  Dr. Martinez completed this examination and concluded that, despite Flores's history of mental illness, there was "little compelling indication of major mental illness playing a primary contributing role in relation to the alleged offense." (D.E. 12-13 at 131).  Dr. Martinez's testimony at trial reiterated this conclusion.  (D.E. 12-9 at 85-86).  Thus, counsel made a reasonable investigation into the issue of Flores's mental status by seeking and obtaining a psychiatric examination, but the results of that examination did not support an insanity defense.  Closing arguments show that counsel nonetheless attempted to use Flores's history of mental illness as grounds for an acquittal without contradicting Dr. Martinez's

conclusions.  (*Id.* at 151-53).  Further, Flores's claim that counsel ignored the possibility of an insanity defense because he wanted to walk co-counsel through a murder trial is conclusory.  *Ross*, 694 F.2d at 1011.  Finally, although counsel did not introduce Flores's medical or school records, the undisputed testimony of Dr. Martinez and Lovenia Flores discussed Flores's history of mental illness and placement in special education classes. (D.E. 12-9 at 17, 66-67, 99).   Accordingly, Flores has not established that counsel performed deficiently and, therefore, has not met his burden under AEDPA to show that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law.

   b.    *Coercion by Counsel*

   Next, Respondent argues that Flores's claims of coercion are conclusory and not supported by Flores's prior statements under oath.  (D.E. 14 at 16).

   Flores responds that the medication he was on while detained influenced his mental state and allowed counsel to coerce him into going to trial.  (D.E. 17 at 11).  He notes that, despite pleading not guilty and going to trial, he confessed to the police twice and counsel's strategy of going to trial produced a more severe conviction and sentence. (*Id.* at 12).   Moreover, Flores asserts that had counsel allowed him to testify, he could have explained that the victim attacked him first and provoked him.  (*Id.* at 19).

   Here, Flores has not established that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law because his claims of coercion are conclusory and not supported by the record.  In their affidavits, both of Flores's lawyers indicated that they never coerced him into making any statement

to anyone. (D.E. 12-35 at 75, 77). Moreover, Flores stated during both the guilt and sentencing stages of the trial that he understood his right to testify and chose not to do so. (D.E. 12-9 at 115-18; D.E. 12-10 at 135). In denying Flores's Article 11.07 application, the state court made an implied factual finding in favor of counsel. This finding is presumed to be correct unless Flores can rebut it with clear and convincing evidence, but there is no evidence in the record supporting his claim other than his own conclusory statement. *See Garcia*, 454 F.3d at 444. Accordingly, he has not established that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law

   *c.* *Failure to Challenge Medical Evidence and Photos*

  Next, Respondent contends that Flores's claims that the victim's injuries were caused by drug use is conclusory and cannot support relief. (D.E. 14 at 16-17). Further, Respondent argues that Flores's counsel did challenge the introduction of the autopsy photos. (*Id.* at 17).

  Flores responds that counsel should have objected to the autopsy photos and the medical examiner's findings. (D.E. 17 at 21). He argues that many of the issues described in the findings were the result of the victim's years of drug use and sex work. (*Id.* at 21-22). He also argues that counsel should have objected to the prosecutor's closing arguments. (*Id.* at 24-25). Finally, he argues that the cumulative effect of all of counsel's deficiencies prejudiced him. (*Id.* at 26-27). Flores attached several new exhibits to his response. (D.E. 17-1).

  Respondent replies that the cumulative error claim was raised for the first time in

Flores's response and should not be considered both because Flores did not obtain leave to amend his petition and the claim is unexhausted.  (D.E. 20 at 2-7).

Failure to raise meritless objections does not constitute ineffective assistance of counsel.  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

Assertions of prosecutorial misconduct is reviewed in two steps.  *United States v. McCann*, 613 F.3d 486, 494 (5th Cir. 2010).  First, the court determines whether the prosecutor made an improper remark.  *Id.*   Second, if an improper remark was made, the court determines whether it affected the defendant's substantial rights.  *Id.*  "A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009).

Here, Flores has not established that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law because his claims about the medical evidence are conclusory, the state did not make improper comments during closing arguments, and counsel did object to the autopsy photos.  First, as to counsel's failure to object the medical evidence and medical examiner's testimony, Flores's claim that some of the victim's injuries were caused by her drug use is conclusory, and the medical examiner testified that a toxicology analysis showed no evidence of drug use.  (D.E. 12-8 at 204).  Flores has not established that there was a non-meritless objection that counsel should have made.  *Clark*, 19 F.3d at 966 (noting that counsel has no duty to raise meritless objections). Second, as to closing arguments, the prosecutor did not make any improper remarks.  The state made an argument regarding

17

Flores's use of the knife, but there was properly admitted evidence of a knife wound on the victim's head, and the state merely discussed a reasonable conclusion from that evidence regarding the timeline of events that led to that knife wound.  (D.E. 12-10[2] at 156); *Vargas*, 580 F.3d at 278.  Third, counsel did object to the introduction of the autopsy photos, but the court overruled the objection.  (D.E. 12-9 at 188-90).

Lastly, it does not appear that Flores exhausted his cumulative error claim.  He did not raise it before the state court.  (*See* D.E. 12-35 at 17-24).  Further, the claim is procedurally defaulted because Flores could not now raise it before the state court.  *See* Tex. Code Crim. P. art. 11.07, sec. 4(a).  Flores has not established cause for, or prejudice from, this default, nor has he submitted any new evidence establishing that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386.  The new evidence that Flores submitted with his response includes: (1) two affidavits regarding his ineffective-assistance claims; (2) a letter from the State Bar of Texas discussing his claim against appellate counsel; (3) an affidavit from appellate counsel discussing his appellate representation; (4) medical records from 2012 discussing Flores's mental health; (5) an information sheet discussing a medication called Geodon that Flores was taking in prison; (6) correspondence between Flores and the Food and Drug Administration and Department of Justice regarding Geodon; and (7) Flores's high school transcript.  (D.E. 17-2 at 1-41).  The affidavits and documents relating to ineffective-assistance and Geodon are unrelated to whether Flores could

---

[2] Based on the context of the argument, it appears that Flores is referring to the state's closing arguments at the sentencing stage.  However, the same is true of the state's arguments regarding the knife at the guilt stage.  (*See* DE. 12-9 at 164).

reasonably be found guilty.  Flores's past mental health diagnoses and educational history were part of the trial record, and these records do not show that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.  *McQuiggin*, 569 U.S. at 386.  Thus, the cumulative error claim is unexhausted and procedurally defaulted.

> d.    *Eighth Amendment Violation*

Finally, as to a possible Eighth Amendment violation, Respondent first argues that Flores failed to exhaust his claim that his sentence violated the Eighth Amendment because counsel coerced him into not testifying.  (D.E. 14 at 8-12).  As to the other aspects of this claim, Respondent argues that Flores has not shown that his life sentence is grossly disproportionate to the severity of the offense.  (*Id.* at 19).  Respondent asserts that the expert testimony at trial established that Flores was sane.  (*Id.*).

Flores responds that his Eighth Amendment rights were violated because his mental illness prevented him from having the necessary mental state to commit the crime.  (D.E. 17 at 17).  Flores argues that any procedural default resulting from his failure to exhaust is excused by the fact that he is actually innocent.  (*Id.* at 26).

The appropriate analysis for an Eighth Amendment claim against a sentence for a term of years remains unclear under the Supreme Court's precedent.  *See, e.g., Lockyer v. Andrade*, 538 U.S. 63 (2003); *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983); *Rummel v. Estelle*, 445 U.S. 263 (1980).  In short, a "gross disproportionality principle is applicable to sentences for terms of years," although "the precise contours" of this principle are unclear and it only applies in "exceedingly rare" or

"extreme" cases.  *Lockyer*, 538 U.S. at 72-73.  Thus, in the context of a § 2254 petition, the Court concluded that the state court did not unreasonably apply clearly established federal law when it concluded that two consecutive terms of 25 years to life in prison were not grossly disproportionate for a recidivist convicted of stealing a total of nine videotapes.  *Id.* at 66, 77.

Here, as an initial matter, Flores failed to exhaust his claim that his Eighth Amendment rights were violated because counsel coerced him into not testifying.  Flores did not raise this claim before the state court.  (*See* D.E. 12-35 at 17-24).  Moreover, it is procedurally defaulted because Flores can no longer raise it in state court.  *See* Tex. Code Crim. P. art. 11.07, sec. 4(a).   Flores has not shown cause for or prejudice from the procedural default, nor has he presented new evidence establishing that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.  (*See* D.E. 17-2 at 1-41); *Rocha*, 626 F.3d at 822; *McQuiggin*, 569 U.S. at 386.  Regardless, this does not appear to be an Eighth Amendment claim, but rather a Sixth Amendment ineffective-assistance claim because it does not challenge his sentence, but rather the actions of counsel.  Liberally construed, the claim was arguably exhausted as a Sixth Amendment claim, but Flores has not established that the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law because it is conclusory and not supported by the trial record.  *Ross*, 694 F.2d at 1011. The trial court discussed the right to testify with Flores at both the guilt and sentencing stages, and Flores stated that he did not want to testify.  (D.E. 12-9 at 115-18; D.E. 12-10 at 135).

As to the other aspects of the claim, Flores has not established that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law because, as discussed above, he has not established that he lacked the mental capacity to commit the offense.  The evidence at trial indicated that Flores did have the mental capacity to commit the offense and that there was "little compelling indication of major mental illness playing a primary contributing role in relation to the alleged offense."  (D.E. 12-9 at 85-86; D.E. 12-13 at 131).  Finally, although Flores's claim is based on his contention that he lacked the mental capacity to commit the offense rather than a direct attack on the length of the sentence, he also has not established that the sentence itself violates the Eighth Amendment.  Flores has not established that a life sentence is grossly disproportionate for a murder conviction or that his case is exceptionally rare or extreme.  *See Lockyer*, 538 U.S. at 72-73.  Thus, Flores has not established an Eighth Amendment violation and, accordingly, has not established that the state court's denial of his claim was contrary to, or an unreasonable application of, clearly established federal law.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Flores has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Here, reasonable jurists would not find it debatable that Flores's claims lack merit. Therefore, it is further recommended that any request for a COA be denied.

## VI.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 14) be GRANTED and Flores's § 2254 petition be DENIED.  In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 6th day of October, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).